# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARGARET E. WEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV582 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Margaret E. Weaver, brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI benefits on May 9, 2007 alleging a disability onset date of February 11, 2006. (Tr. 9, 96-99, 112.)[2] The application was denied initially and upon reconsideration. (*Id.* at 44-48, 57-61, 62-66.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 67.) Present at the September 16, 2009 hearing were Plaintiff, her attorney, and a Vocational Expert ("VE"). (*Id.* at 23-42.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 9-17.) On May 26, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-six years old when she applied for SSI, had a limited education, could communicate in English, and had past relevant work as a day care worker. (*Id.* at 16.)

# III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

---

[2] Transcript citations refer to the administrative record.

2

adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the inability to do "any substantial gainful activity by

3

reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. *Id.* § 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

4

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point she determined that Plaintiff was not disabled. (Tr. 16-17.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity. (*Id.* at 11.) The ALJ next found in step two that Plaintiff had severe impairments: degenerative disc disease, borderline intellectual functioning, obesity, and chronic obstructive pulmonary disease. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ concluded that Plaintiff could no longer perform her past relevant work as a day care worker. (*Id.* at 16.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.*) Based on the evidence as a whole, the ALJ

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

determined that Plaintiff retained the RFC to perform sedentary work with some additional limitations. Specifically, the ALJ determined Plaintiff could lift and carry ten pounds occasionally, sit for six hours in an eight hour day and stand and walk for two hours (each) in an eight hour day. (*Id.*) Plaintiff was limited to no climbing of ladders, occasional kneeling, occasional crawling, and occasional crouching. (*Id.*) She was to avoid concentrated exposure to pulmonary irritants such as gases, chemicals, fumes and dust. (*Id.*) She was also to avoid hazards such as moving machinery or unprotected heights. (*Id.*) Plaintiff could also perform simple, routine, repetitive work tasks, but was not to be placed in a quota based or production based work environment. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence, including Plaintiff's testimony, and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 12.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could not perform her past relevant work as a day care worker. (*Id.* at 16.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If she establishes at step four that she cannot do any

6

past work because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was forty-six years old on the date she filed her application, had a limited education, and had the ability to communicate in English. (Tr. 16.) The ALJ noted that transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers that Plaintiff could perform and that she was not disabled. (*Id.* at 16-17.)

## V. ANALYSIS

Plaintiff raises four issues. First, Plaintiff contends the ALJ ignored the treating physician rule. (Docket Entry 9 at 1-2.) Second, Plaintiff argues that the ALJ failed to properly evaluate her credibility. (*Id.* at 2.) Third, Plaintiff asserts that the ALJ failed to properly consider obesity. (*Id.*) Fourth, Plaintiff contends that the ALJ erred by failing to reconcile a conflict between the Dictionary of Occupational Titles ("DOT") and the testimony of the VE. As explained below, remand is proper because the last issue has merit.

### A. The ALJ Did Not Err in Her Application of the Treating Physician Rule.

Plaintiff contends that the ALJ ignored the treating physician rule. (Docket Entry 9

7

at 15.) The "treating physician rule,"[6] 20 C.F.R. § 416.927(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 416.927(d)(2).[7] But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 416.927(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case

---

[6] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[7] Social Security Ruling ("SSR") 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions.* Yet, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* SSR 96-5p provides that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner.* "[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

8

record.  *Id.* § 416.927(d)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590; *accord Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001).  Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone.  20 C.F.R. § 416.927(e).

Plaintiff contends that the ALJ erred in giving the medical opinion of Dr. Todd Shapley-Quinn "little weight," because it was only a short statement of her primary care provider.  (Docket Entry 9 at 15 referencing Tr. 15, 414 "This note is to document that [Plaintiff] is currently unable to work due to orthopedic problems.")  Plaintiff contends further that the ALJ failed to consider the abovementioned regulatory factors, instead placing undue weight on the single criteria of "specialization."  (*Id.* at 16.)  Plaintiff also asserts that the ALJ ignored Dr. Shapley-Quinn's more detailed medical opinion.  (*Id.* citing Tr. 415-16 (estimating that Plaintiff was limited from engaging in "any work or training" for "120 days or more," and that surgery might improve Plaintiff's condition, but the "current situation does not allow it").)  Plaintiff also points to Dr. Shapley-Quinn's treatment notes indicating Plaintiff could no longer work because of constant pain in her back and legs when standing upright and noting that she had gained twenty-give pounds in two years.  (*Id.* citing Tr. 542.)  The Doctor noted too that Plaintiff's prognosis was not optimistic unless she could "get more serious about weight loss" and lose substantial weight.  (*Id.*)  Last, Plaintiff points to treatment notes from Hillsborough Family Practice documenting the use of

9

humidified oxygen for sleep apnea and noting further the use of prednisone—a drug which can cause weight gain—for her breathing. (*Id.* at 190, 541.)

There is no error here. The ALJ addressed Dr. Shapley-Quinn's opinion as follows:

> As for the opinion evidence, the undersigned notes that there is only one medical source opinion statement in the hearing evidence from any of the claimant's treating physicians. This statement was not completed by either of the claimant's back specialists, rather, it is a short statement of her primary care provider. In this statement, the physician merely indicates that the claimant is currently unable to work due to her orthopedic problems (dated January 10, 2008) (*See* Exhibit 11F). The undersigned gives this statement little weight as it is not proffered in terms of any functional assessment of the claimant's ability to perform work-related duties. It also is arguably outside the scope of the physician's expertise as he is a general physician and not an orthopedist or pain specialist. It certainly is not the statement of the best medical source to provide such information in this matter as the claimant is regularly treated by an orthopedist and a pain management specialist for her orthopedic impairment.
>
> The undersigned notes that, interestingly, the claimant's orthopedist has only advised the claimant to "[a]lways be careful lifting and bending." (Exhibit 4F). There are no indications of any permanent functional restrictions placed upon the claimant by the orthopedist. Additionally, an emergency room attend[ant], who treated the claimant for an acute episode of back pain on November 24, 2007, following her having overdone it preparing and celebrating Thanksgiving with her family, restricted the claimant to no lifting over ten pounds, no bending or stooping, and no prolonged sitting during her recovery from that acute episode. (Exhibit 12F).

(Tr. 15.)

As Defendant correctly points out (Docket Entry 14 at 9), the ALJ noted that Dr. Shapley-Quinn conducted physical examinations of Plaintiff for her back impairment (Tr.

13, 189, 191-95, 197-98, 376-78, 380-83) and was therefore aware of the length and the nature and extent of the treating relationship. Likewise, the ALJ considered the supportability of Dr. Shapley-Quinn's opinion by noting that it was not proffered in terms of a functional assessment detailing Plaintiff's ability to perform work-related activities. (Tr. 15.) The ALJ's decision also demonstrated that Dr. Shapley-Quinn's opinion was inconsistent with the opinions rendered by her treating orthopedist, the University of North Carolina Hospital, and the Disability Determinations Services ("DDS") physicians. (*Id.* at 15 and 16.) More specifically, as Defendant correctly points out (Docket Entry 14 at 8), Plaintiff's treating orthopedist set forth no permanent restrictions and instead stated that Plaintiff was only required to be careful when lifting and bending. (Tr. 280.) The University of North Carolina Hospital stated that Plaintiff was only limited to no bending, or stooping, or prolonged sitting, and no lifting over ten pounds (*id.* at 431) and set forth no restrictions in activity (*id.* at 221, 613). A DDS physician, Dr. Melvin L. Clayton, opined that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally; could push and pull without limitation; and could walk, sit, and stand for six hours in an eight hour workday. (*Id.* at 336.) Similarly, another DDS physician, Dr. Berton Haywood, provided that Plaintiff could lift twenty ponds occasionally and ten pounds frequently; could push and pull without limitation; and could stand, walk, and sit for six hours in an eight hour workday. (*Id.* at 467.) In fact, Dr. Haywood concluded that Dr. Shapley-Quinn's opinion was not completely credible given the objective medical evidence on record. (*Id.* at 472 ("Statement doesn't seem entirely credible based on objective evidence.").)

11

Plaintiff appears to argue that there was a "more detailed" portion of Dr. Shapley-Quinn's opinion that the ALJ did not consider (Docket Entry 9 at 16-17 citing Tr. 415-16) and that Dr. Shapley-Quinn provided an additional treatment note at the same time he rendered his opinion (Tr. 542) which the ALJ failed to consider. Neither of these arguments have merit. First, the ALJ repeatedly indicates that she considered the entire record. (TR. 11-12.) The Court is entitled to rely on these representations absent a compelling reason to the contrary. *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, *6 (W.D.N.C. Nov. 18, 2010) (unpublished) *citing Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991). Second, the portion of Dr. Shipley-Quinn's opinion that Plaintiff references merely reiterates that Plaintiff could not work and added a time frame of 120 days or more and a statement that she might improve with surgery if she were able to undergo such treatment. (Tr. 415.) Likewise, Dr. Shipley-Quinn's additional treatment notes indicating Plaintiff could no longer work because of constant back and leg pain and noting that she had gained twenty-give pounds in two years are simply inconsistent with the remainder of the record, discussed above, which demonstrates no such limitation.

Finally, Plaintiff references treatment notes from Hillsborough Family Practice demonstrating that Plaintiff suffered from sleep apnea. (Docket Entry 9 at 17 citing Tr. 190, 541). Specifically, Plaintiff asserts that "On 9/17/08 and 11/19/07, notes from Hillsborough Family Practice documented the use of humidified oxygen for sleep apnea. On 1/17/07, another record from Hillsborough Family Practice noted use of prednisone for her breathing, a drug that produces substantial weight gain." *Id.* citing Tr. 190, 541. Even if

these notes are consistent with Dr. Shipley-Quinn's medical opinion on this issue, these notes are inconsistent with those opinions discussed above rendered by her treating orthopedist, the University of North Carolina Hospital, and the DDS physicians which do not indicate that Plaintiff's sleep apnea rendered her disabled under the Act, alone or in conjunction with other limitations.

## B. The ALJ's Credibility Determination Is Supported by Substantial Evidence.

Plaintiff also contends that the ALJ's credibility analysis is in error. (Docket Entry 9 at 12-15.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. First the ALJ must determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby*, 2010 WL 5553677, at *3 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, also instructs the ALJ to "consider

13

the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96–7p. An ALJ's credibility determination receives "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

Here, the ALJ completed both steps of the *Craig* analysis. First, the ALJ considered the evidence of record and concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 12.) In reaching this conclusion, the ALJ addressed Plaintiff's mental impairment, respiratory impairment, obesity, and back impairment. (*Id.* at 12-15.) Regarding the latter, which the ALJ described as the "most limiting impairment," the ALJ noted that Plaintiff "has had several MRIs showing a left lateral disc displacement at L4-5 which displaces the nerve root at that level. . . . She has been noted upon physical examinations to have positive straight leg raise testing in both legs, sometimes independent of one another, and sometimes presenting bilaterally at the same time. . . . She has consistently been noted to have limitation in flexion and extension of her lumbar spine." (*Id.* at 13-14.) The ALJ further noted that Plaintiff was treated with narcotic pain medications and followed by a pain management specialist, and received epidural steroid injections. (*Id.* at 14.)

Second, the ALJ went on to perform the next step of the *Craig* analysis, concluding further that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 12.) In light of this, the ALJ partially

14

discounted Plaintiff's credibility; reasoning in pertinent part that:

> [I]n light of the . . . objective medical records, the undersigned finds that the claimant is not wholly credible in her allegations of disabling impairments during the time period in question. While her back imaging does show evidence of disc protrusion at L4-5 displacing the nerve root, the claimant has not presented as one who is disabled by her impairment. The records document that the claimant has consistently reported maintaining the household for herself and her teenage son and two adolescent grandchildren. She has reported taking vacations (Exhibit 11F). She has failed to show for over nine separate epidural steroid injections (which she has reported are beneficial) and many office visits with her specialists (*See* Exhibits 22F and 24F). The claimant is also noted to be non-compliant with treatment recommendations including, as noted before, failing to obtain the helpful steroid injections, failing to taker her medications as prescribed (as noted by her report as well as her urine screens), and failing to use her CPAP machine. She has also been advised to lose weight and exercise (her primary care physician has commented that she is not really trying to do so despite her reports), as well as to stop smoking (yet she still smokes heavily, between one and two and a half packs per day throughout the time period in question). Finally the medical records of her pain specialist document that the claimant has failed repeated urine drug screens for marijuana, morphine, and alcohol. These were in low doses, however, her pain specialist recently advised the claimant that her non-compliance and her repeated inappropriate urine screens are not acceptable and that if she has any more "strikes" against her the specialist will not treat her in the future.

(Tr. 14.) Substantial evidence supports this analysis. (Tr. 37, 38, 194, 198, 217-18, 221, 256, 258-59, 269, 378, 406, 425, 462, 494, 503, 511, 541-42, 558-59, 573, 576-77, 624, 627.)

Plaintiff disagrees, arguing that the ALJ's decision violates SSR 96-7p (Docket Entry 9 at 12), which instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility,

15

supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.* Plaintiff contends further that the ALJ's decision is essentially unreviewable because the ALJ failed to explain why the evidence cited in her credibility analysis was relevant or what weight it was afforded.

Specifically, Plaintiff contends that the ALJ placed her own opinion against that of the medical evidence in concluding that "the claimant has not presented as one who is disabled by her impairment." (Docket Entry 9 at 13 citing Tr. 14) This argument lacks merit. As noted above, and explained in additional detail below, the ALJ explained that Plaintiff's complaints were inconsistent with the objective medical evidence and other evidence that she vacationed, completed activities of daily living by raising a number of children, failed to follow prescribed treatments, and tested positive for drugs and alcohol.

Plaintiff faults the ALJ for concluding without record citations that she "consistently reported" maintaining a household for herself, her teenage son, and her two adolescent grandchildren, pointing instead to her assertions that she needs assistance in performing daily activities. (*Id.* citing Tr. 132, 156.) Yet, substantial evidence supports the ALJ's conclusion that Plaintiff was able to perform certain activities of daily living, despite Plaintiff's self-reporting to the contrary. As Defendant correctly points out (Docket Entry 14 at 5), Plaintiff also reported that she had custody of her grandchildren (Tr. 37), did an "awesome job" with her son (*id.*), woke up her children and made sure they were prepared

16

for school (*id.* at 38-39), and was responsible for her teenage grandchildren (*id.* at 27-28).

Plaintiff also takes issue with the ALJ's conclusion that she took vacations, asserting that the ALJ could only point to a single vacation of "dubious validity." (Docket Entry 9 at 13-14 citing Tr. 14.) Yet, "acts which are inconsistent with a claimant's assertion of disability reflect negatively upon the claimant's credibility." *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (citation omitted); *Reider v. Astrue*, No. 07–C–7271, 2008 WL 2745958, at *11 (N.D. Ill. July 11, 2008) (unpublished).[8] Thus, the ALJ did not erred by giving consideration to the fact that Plaintiff was able to care for a number of children, or that she took a vacation (Tr. 406), during the time at issue.

Plaintiff asserts further that the ALJ's conclusion that she repeatedly failed drug screens for marijuana, morphine, and alcohol is "inappropriate and completely unsupported by the record," because "[h]er physicians would surely have removed her from the pain clinic program if she were 'repeatedly' found to fail drug tests." (Docket Entry 9 at 14.) Yet the record indicates that Plaintiff tested positive for marijuana a number of times (Tr. 256, 258, 624), positive for morphine once (*id.* at 573),[9] inappropriately for alcohol twice (*id.* at 559; 577), and inappropriately positive for Tramadol and was warned she would receive no

_____

[8] In her brief, Plaintiff indicates that she attended a funeral while in New Orleans (Docket Entry 9 at 14 n.6), but the only evidence in the record in this regard is to the contrary (*Compare* Tr. 406 3/30/2007 "Today she returns after having just returned from her vacation in Norland." *with* Tr. Plaintiff testifying that she "pretty much [did not] leave [her] room.") Plaintiff had the burden of submitting evidence to support her claim of disability, but her unsupported suggestions do not meet this burden. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. § 416.912(a), (c).

[9] Plaintiff attributed her positive test for morphine to a "pain shot" at an emergency room visit. (Tr. 573.) Plaintiff's doctor described this as a "misunderstanding" and did not consider it a "deliberate wrong" on Plaintiff's part. (*Id.*) Nevertheless, even assuming that this has no bearing on Plaintiff's credibility, there remains on the record sufficient evidence, described above, to support the ALJ's credibility analysis.

17

additional chances (*id.* at 627). This is relevant to Plaintiff's credibility. For example, that Plaintiff tested positive for marijuana (*id.* at 258) while asserting she did not use drugs recreationally (*id.* at 259) justifies finding Plaintiff less than wholly credible. *See, e.g., Goforth v. Astrue*, No. 1:10cv102, 2011 WL 6019956, at *8 (W.D.N.C. Dec. 2, 2011).

Last, the ALJ noted that Plaintiff self-reported to Dr. Neil E. Garret during a consultative exam that a "breathing problem" was her primary complaint. (Docket Entry 9 at 14 citing Tr. 14, 462.) From this, Plaintiff argues that the ALJ failed to consider evidence of her other impairments. (*Id.* at 14-15.) However, the ALJ's decision noted that Plaintiff's "most limiting impairment . . . is her back impairment" (Tr. 13) and considered evidence of that impairment (*id.* at 13-14) and also her obesity (*id.* at 15), mental impairments (*id.* at 13), and hypertension (*id.* at 12). In short, the ALJ articulated her credibility analysis such that it is susceptible to judicial review and it is supported by substantial evidence in the record.

## C. The ALJ Properly Assessed Plaintiff's Obesity.

The ALJ analyzed Plaintiff's obesity at some length, explaining that:

> The undersigned has considered the claimant's obesity in light of the guidelines set forth in Social Security Ruling 02-01P. The medical evidence documents that the claimant has been considered morbidly obese throughout the time period in question. Her weight has not been recorded by her physicians very often, however, the medical evidence documents weights ranging between 337 and "greater than" 350. The claimant's primary care physician commented on January 10, 2008, when he recorded her weight at 337 pounds, that claimant had gained 25 pounds in the last two years. (*See* Exhibit 20F). The medical records document that the claimant has on two separate occasions been prescribed a weight loss drug by her primary care physician, and that all of her physicians have advised her to lose weight. Her physician has commented however that the

18

claimant is not trying in earnest to do so. (*See* Exhibit 20F). The undersigned acknowledges that the claimant's obesity is certainly an aggravating factor in her back pain. However, the medical evidence fails to establish that the claimant has disabling impairments, even when her obesity is considered in combination with her other impairments. The claimant has apparently been significantly obese since prior to her alleged onset date and nothing has occurred, according to the medical records, to cause a finding that her obesity has suddenly so exacerbated her other severe impairments as of her alleged onset date so as to render the claimant disabled under Social Security Ruling 01-02p.

(Tr. 15.)

Citing SSR 02-1p,[10] Plaintiff contends that the ALJ erred by manufacturing her own medical opinion "that obesity has not increased the severity of [Plaintiff's] impairments." (Docket Entry 9 at 18.) Plaintiff contends that the ALJ erred further by referencing and relying upon a note from Plaintiff's physician indicating that she was not earnestly trying to lose weight, because treatment was never actually prescribed for obesity. (*Id.* citing Tr. 15.) Plaintiff argues too that the record notes the damaging effects of her obesity. (*Id.* citing Tr. 192, 195, 198, 218 376, 411, 542.) Consequently, Plaintiff concludes that remand is proper because the ALJ failed to properly consider her obesity pursuant to SSR 02-1p.

Any error here is harmless. Substantial evidence in the record supports the ALJ's conclusion that Plaintiff's obesity, alone or considered together with her other impairments, did not render her disabled under the Act. As noted, a DDS physician, Dr. Clayton,

---

[10] SSR 02-1p provides, in pertinent part, that "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."

19

evaluated Plaintiff's obesity and found that she could lift 50 pounds occasionally and 25 pounds frequently, push and pull without limitation, and stand, walk, and sit each for six hours in an eight hour workday. (Tr. 342, 336.) Also, a different DDS physician, Dr. Haywood, considered Plaintiff's obesity (Tr. 473), finding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, push and pull without limitations, and stand, walk, and sit each for six hours in an eight hour workday. (*Id.* at 467.) Third, Plaintiff was noted to be obese by the University of North Carolina Hospital, which found further that Plaintiff had no restrictions in activity. (*Id.* at 612-13.) Fourth, even assuming as Plaintiff contends that the ALJ erred by pointing to a treating source who observed that Plaintiff was not trying to lose weight in earnest, any error here is harmless. The record simply does not demonstrate that Plaintiff's obesity, alone or together with other impairments, renders Plaintiff more limited than her RFC suggests, nor does it demonstrate that Plaintiff is disabled under the Act. *See, e.g., Golfieri v. Barnahart*, No. 06–14–B–W, 2006 WL 3531624, at *7 n.4 (D. Me. Dec. 6, 2006) (unpublished).[11]

---

[11] In her reply, Plaintiff also argues that the ALJ's purported errors in addressing her obesity tainted the credibility analysis. (Docket Entry 15 at 9-10.) The undersigned does not agree. As discussed above, one (but not the only) element of the ALJ's credibility analysis was that Plaintiff was "non-compliant with treatment recommendations." The ALJ then listed a number of examples of this noncompliance, one of which was Plaintiff's purported failure to lose weight to address her obesity. However, the ALJ also pointed to a number of additional instances of non-compliance. For example, Plaintiff failed to appear for nine epidural injections and was a no show for a number of appointments. (*See, e.g.,* Tr. 559, 627.) *See, e.g., Cosom v. Astrue*, No. 11–294, 2012 WL 1898921, at *7 (W.D.N.C. Feb. 23, 2012) (unpublished) ("[N]oncompliance with prescribed and recommended treatment and failure to attend follow-up appointments are not consistent with disabling symptoms.") (citations omitted). Even crediting as true Plaintiff's contention that her failure to lose weight should have had no part in the ALJ's credibility analysis, substantial evidence still supports the ALJ's conclusion that Plaintiff was non-compliant with treatment recommendations and that her credibility was not entirely reliable.

**D. The ALJ Erred in Concluding That Plaintiff Can Perform Other Work Existing in Substantial Numbers in the National Economy and Remand Is Required.**

At step two, among her other limitations, the ALJ concluded that Plaintiff was also limited by borderline cognitive functioning. (Tr. 11.) The ALJ then limited Plaintiff to simple, routine, repetitive tasks in a non-quota based and non-production based environment. (*Id.*) Later, at the hearing, the ALJ's hypothetical to the VE asked her to:

> [a]ssume a younger individual who has a tenth grade education primarily in special ed classes and has the [Plaintiff's] past relevant work experience. Assume further that the individual can lift and carry up to 10 pounds occasionally. That individual can sit for about six hours in a routine eight hour workday and stand and walk for brief periods of time, up to 15 minutes continuously for about two hours during an eight hour day. Assume further that this individual should never climb ladders. She should only occasionally kneel, crouch or crawl. The individual should avoid concentrated exposure to pulmonary irritants such as gases, chemical[s], fumes and dust. The individual should avoid hazards such as moving machinery and unprotected heights. *The individual can do simple, routine, repetitive work tasks. The individual should not be placed in a quota based or production based job.*

(Tr. at 41 (emphasis added).) Based on VE testimony, the ALJ concluded that despite these limitations Plaintiff can work as an order clerk, food checker, or charge account clerk. (*Id.* at 17.) Each of these jobs requires a reasoning level of three. *See* Food Checker, DOT No. 211.482–014, 1991 WL 671856; Charge–Account Clerk, DOT 205.367–014, 1991 WL 671715; Order Clerk, DOT No. 209.567–014, 1991 WL 671794. Plaintiff's counsel declined to examine the VE. (Tr. at 41.) However, Plaintiff now argues that the ALJ erred because a limitation to simple, routine repetitive tasks is inconsistent with performance of these

21

positions. (Docket Entry 9 at 9.)[12]

Plaintiff consequently contends that:

> According to the DOT, reasoning level "1" jobs can be
> performed by an individual who can understand and carry out
> simple instructions and level "3" jobs can be performed by an
> individual who can understand and carry out instructions
> furnished in written, oral, or diagrammatic form, and deal with
> problems involving several concrete variables in or from
> standardized situations. Reasoning level "3" jobs would thus be
> far beyond the ken of persons limited to "simple, routine,
> repetitive tasks."

---

[12] The DOT defines six reasoning levels which ascend in increasing levels of complexity. For
example, the DOT has defined the first four reasoning levels as follows:

> 04 Level Reasoning Development
>
> Apply principles of rational systems to solve practical problems and
> deal with a variety of concrete variables in situations where only
> limited standardization exists. Interpret a variety of instructions
> furnished in written, oral, diagrammatic, or schedule form. . . . .
>
> 03 Level Reasoning Development
>
> *Apply commonsense understanding to carry out instructions furnished in written,
> oral, or diagrammatic form. Deal with problems involving several concrete
> variables in or from standardized situations.*
>
> 02 Level Reasoning Development
>
> Apply commonsense understanding to carry out detailed but
> uninvolved written or oral instructions. Deal with problems involving
> a few concrete variables in or from standardized situations.
>
> 01 Level Reasoning Development
>
> Apply commonsense understanding to carry out simple one- or two-
> step instructions. Deal with standardized situations with occasional or
> no variables in or from these situations encountered on the job.

DOT, Appendix C *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAP
PC.HTM (emphasis added) (hereafter "DOT, Appendix C.")

(Docket Entry 9 at 11.)

In support of this contention, Plaintiff points to SSR 00-4p, which provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> . . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
>> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>>
>> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

23

SSR 00-4p, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.*

The threshold question here becomes whether Plaintiff's RFC limitation to simple, routine, repetitive tasks in a non-production environment necessarily conflicts with a reasoning level of three. The Fourth Circuit Court of Appeals has not specifically addressed in a published decision the correlation between the DOT reasoning levels and an RFC limiting a claimant to simple, routine, repetitive work. The Circuit courts that have addressed the issue have split[13] as have many district courts—including district courts in the Fourth Circuit.[14] In a previous case, the undersigned concluded that a limitation to simple,

---

[13] *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding apparent conflict between job requiring reasoning level three and claimant's limitation to simple and routine work tasks) *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring reasoning level of three and claimant's limitation to simple work) and *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict between job requiring reasoning level three and claimant's inability to do complex technical work). Although the Ninth Circuit Court of Appeals has not definitively addressed the issue, the majority of district courts within the Ninth Circuit have concluded that there is a conflict between a limitation to simple, routine, repetitive work and level three reasoning. *See Espinoza v. Astrue*, No. 5:12–cv–00544–OP, 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013) (unpublished) (recognizing that the Ninth Circuit has not addressed the issue directly, but "the weight of authority in this Circuit holds that a limitation to simple, repetitive or routine tasks is incompatible with a reasoning level of 3") (collecting cases).

[14] *Compare Williams v. Astrue*, Civil No. 3:11CV592–MOC–DSC, 2012 WL 4756066, *5 (W.D.N.C. Aug. 27, 2012) (unpublished) ("Because the ALJ limited Plaintiff to unskilled work, and the VE suggested jobs with a reasoning development level of three or lower, there was no conflict between the VE's testimony and the DOT."); *Thacker v. Astrue*, No. 3:11CV246–GCM–DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (unpublished) ("The requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work. Jobs classified at reasoning level three require the worker to '[a]pply commonsense understanding to carry out instructions . . . .' Thus, reasoning level three is very similar to reasoning levels one and two.") (unpublished) (citation omitted) *with Lee v. Colvin*, No. 1:12CV–00161–HBB, 2013 WL 1878888, *9-10 (W.D. Ky. May 3, 2013) (unpublished) (concluding that "the case will be remanded to allow the Commissioner to address the apparent conflict between Plaintiff's inability to perform more than simple instructions and the level 3 reasoning required by the surveillance system monitor job identified by the vocational expert"); *Lane v. Astrue*, No. 2:11 cv6, 2012 WL 1032705, at *5 (W.D.N.C. March 9, 2012)

24

routine, repetitive tasks is consistent with a reasoning level two, but left open the issue of whether a reasoning level of three was consistent with such a limitation. *Green v. Colvin*, No. 1:10CV561, 2013 WL 3206114, *8-9 (M.D.N.C. June 24, 2013).

Having carefully considered the issue, the undersigned is persuaded by the reasoning underlying those cases holding that there is an apparent conflict between jobs requiring a reasoning level of three and a claimant's limitation to simple, routine, repetitive jobs. *See, e.g.,* *Hackett*, 395 F.3d at 1175 (concluding that "level-two reasoning appears more consistent with Plaintiff's RFC [for simple and routine work tasks]"); *Tudino v. Barnhart*, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443 at * 11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."). Remand is therefore proper. Also, here, the ALJ did not ask the VE whether her opinion conflicted with the DOT description of the jobs she suggested. Further, the ALJ did not address the issue of the conflict in her decision. Instead, the ALJ found "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*" (Tr. 17.) There appears to be no factual basis for this finding and it does not comport with applicable law because the ALJ failed to inquire about a conflict between the VE's opinion and the DOT. The ALJ's

---

(unpublished) ("Because the ALJ did not inquire on the record as to whether the vocational evidence was consistent with the DOT and did not obtain any explanation for the apparent conflict between the ALJ's assessment that Plaintiff was limited to simple work involving one or two step tasks and instructions and the vocational expert's testimony that Plaintiff could perform jobs with a reasoning level of three, the ALJ erred by relying on the testimony."); *Yurek v. Astrue*, No. 5:08cv500-FL, 2009 WL 2848859, at *8-9 (E.D.N.C. Sept. 2, 2009) (unpublished) (holding remand is required where the ALJ fails to obtain an explanation for an apparent conflict between the vocational expert's testimony that a claimant could perform a job that the DOT classified as reasoning level three when the ALJ limited the claimant to simple and repetitive tasks).

omission is not harmless because an unexplained apparent conflict exists. Following S.S.R. 00–4p, and the above-cited cases concluding that level three reasoning is inconsistent with a limitation to simple, routine, repetitive tasks, the undersigned concludes that remand to the ALJ is appropriate to address this apparent unresolved conflict between the jobs identified by the VE and the DOT's classification of these jobs.

Defendant's arguments to the contrary are not convincing. First, Defendant argues that concluding that reasoning level three conflicts with a limitation to simple, routine, repetitive tasks would lead to absurd results, such as mandating that all illiterate claimants would be disabled, because all jobs have a language development level of one, which entails reading at a rate of 95-120 words per minute. (Docket Entry 14 at 17.) However, Plaintiff has raised no such argument in this case. The question here is whether Plaintiff's RFC is consistent with level three reasoning and the failure to address an apparent conflict.

Second, Defendant contends that in failing to examine the VE, Plaintiff has waived this issue. (*Id.* at 19-20.) However, as noted, SSR 00–4p places an affirmative duty on the ALJ to inquire about the consistency of a VE's testimony with the DOT. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006); *see also* SSR 00–4p. Thus, a claimant does not forfeit or waive her right to raise this particular issue before the district court if the claimant failed to raise it at the ALJ hearing. *See, e.g., Prochaska*, 454 F.3d at 735. The undersigned concludes that by virtue of the ALJ's affirmative duty to inquire about inconsistencies between the VE's testimony and the DOT, the issue presented has not been waived. *See, e.g., Lane*, 2012 WL 1032705, at *5; *Romine v. Barnhart*, 454 F. Supp. 2d 623, 631 (E.D. Tex. 2006).

26

Third, Defendant argues that this issue is governed by the DOT's articulation of specific vocational preparation times ("SVP") and not the DOT's reasoning levels. (Docket Entry 14 at 17-18.) However, DOT reasoning levels are distinct from SVP times and the undersigned is persuaded by those cases concluding that the former are a better gauge for job complexity. *See, e.g., Minichino v. Colvin*, No. 3:12–CV–625, 2013 WL 3287142, *19 (M.D. Pa. June 28, 2013) (unpublished) (citations omitted); *Yurek*, 2009 WL 2848859, at *9; *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006); *Hall–Grover v. Barnhart*, No. 03–239–P–C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004) (unpublished).

Last, Defendant argues that evidence in the record suggests Plaintiff can perform level three reasoning: she has a tenth grade education (Tr. 122), past semi-skilled work as a nursery school attendant (*id.* at 40) at a reasoning level of three (*id.; see also* DOT No. 359.677-018 *available at* 1991 WL 672970), and a consultative psychologist acknowledged that while Plaintiff demonstrated borderline cognitive functioning (*id.* at 493), she could "understand, retain, and follow instructions." (*id.* at 498). Yet, as explained, the VE never testified to the apparent conflict between reasoning level three and Plaintiff's restriction to simple, routine, repetitive tasks, in a non-production or non-quota based environment. Thus, the question of whether Plaintiff could perform jobs requiring level three reasoning during the alleged period of disability remains unanswered. Beyond this, the undersigned notes in passing that the consultative psychologist mentioned above also indicated that Plaintiff had a full scale IQ of 72,[15] that she reads words at a fifth grade level, performs math

---

[15] Generally, an IQ of 70 is considered just at the borderline of mental retardation. American

calculations at a fourth grade level, that her writing sample was comparable to that of a second grader, and that "[g]iven her score on the arithmetic subtest if awarded benefits, a payee may need to be appointed" (*id.* at 497-98). None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 2, 2013

---

Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM–IV–TR) 41–43 (4th ed. 2000).

28